FILED

2016 Mar-30  PM 03:57
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JUSTIN LEE, individually and on behalf of all similarly situated persons, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 2:16-cv-00159-SGC |
| v. | ) ) | **ORAL ARGUMENT REQUESTED** |
| HYUNDAI MOTOR AMERICA, INC.; PRECISION TUNE AUTO CARE, | ) ) ) | |
| Defendants. | ) | |

## DEFENDANT HYUNDAI MOTOR AMERICA'S OPPOSED MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Harlan I. Prater, IV
Wesley B. Gilchrist
Robert Jackson "Jay" Sewell
LIGHTFOOT FRANKLIN & WHITE LLC
400 20th Street North
Birmingham, Alabama 35203
Telephone: (205) 580-0700
E-mail: hprater@lightfootlaw.com
E-Mail: wgilchrist@lightfootlaw.com
E-Mail: jsewell@lightfootlaw.com

Michael L. Kidney*
James W. Clayton*
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004
Telephone: (202) 637-5600
E-mail: michael.kidney@hoganlovells.com
E-mail: james.clayton@hoganlovells.com
*pro hac vice pending

*Attorneys for Defendant Hyundai Motor America*

## <u>TABLE OF CONTENTS</u>

**Page(s)**

PRELIMINARY STATEMENT ...........................................................................1

BACKGROUND ...............................................................................................3

STANDARD OF REVIEW ................................................................................5

ARGUMENT ....................................................................................................6

I.    Plaintiff Fails to State a Breach of Contract/Warranty Claim.......................6

    A.    Any Claims for Breach of Contract Fail As a Matter of Law..............6

    B.    Any Claims for Implied Warranty Fail As a Matter of Law................7

    C.    Any Claims for Express Warranty Fail As a Matter of Law. ..............8

        1.    Plaintiff does not allege he provided the required pre-suit
notice. ........................................................................................8

        2.    Plaintiff fails to allege that the Limited Warranty
promised a vehicle that would never need repairs.....................9

        3.    Plaintiff does not adequately allege that the repairs he
sought were covered under the terms of the Limited
Warranty....................................................................................11

        4.    Plaintiff does not adequately allege satisfaction of the
conditions precedent the Limited Warranty prescribes. ...........15

II.   Plaintiff's Claim Pursuant to the Lemon Law Should Be Dismissed. ..........16

    A.    The Complaint Does Not Adequately Allege Any
Nonconformance. ................................................................................17

    B.    Plaintiff Did Not Exhaust the Informal Dispute Resolution
Program. ..............................................................................................17

    C.    The Complaint Does Not Adequately Allege a Lemon Law
Violation. .............................................................................................18

III.   Plaintiff's ADTPA Claim Should Be Dismissed. ........................................20

    A.    Plaintiff Did Not Comply with the Pre-Suit Demand
        Requirement. .......................................................................................20

    B.    Plaintiff Has Failed to State an ADTPA Claim. .................................21

        1.    Rule 9(b) applies to Plaintiff's ADTPA claim. ........................22

        2.    The allegations related to the misrepresentations concern
                non-actionable statements or are inadequately pled. ................22

        3.    The Complaint does not adequately allege that HMA had
                knowledge of the information it supposedly omitted or
                that its omission caused Plaintiff's alleged injury. ...................24

        4.    Plaintiff fails to adequately allege monetary damage. ..............28

CONCLUSION .......................................................................................................28

\\DC - 029016/000023 - 7964008 v7

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Honda Motor Co. v. Superior Court*,
132 Cal. Rptr. 3d 91 (Ct. App. 2011) ..................................................26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................5, 6, 23, 25

*Barko Hydraulics, LLC v. Shepherd*,
167 So. 3d 304 (Ala. 2014) ..............................................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................... 6

*Billions v. White & Stafford Furniture Co.*,
528 So. 2d 878 (Ala. Civ. App. 1988) ................................28

*Bodie v. Purdue Pharma Co.*,
236 F. App'x 511 (11th Cir. 2007) ....................................23

*Century 21-Reeves Realty, Inc. v. McConnell Cadillac, Inc.*,
626 So. 2d 1273 (Ala. 1993), *overruled by Hines v. Riverside Chevrolet-
Olds, Inc.*, 655 So. 2d 909 (Ala. 1994) ..............................16

*Chan v. Daimler AG*,
No. 11-5391 (JLL), 2012 WL 5827448 (D.N.J. Nov. 9, 2012).........................26

*Cipollone v. Liggett Grp., Inc.*,
505 U.S. 504 (1992)........................................................10

*Cooper v. Bristol-Myers Squibb Co.*,
No. 07-885, 2009 WL 5206130 (D.N.J. Dec. 30, 2009) .............................22, 27

*Culberson v. Mercedes-Benz USA, LLC*,
616 S.E.2d 865 (Ga. Ct. App. 2005)..........................................10, 15

*Deerman v. Fed. Home Loan Mortg. Corp.*,
955 F. Supp. 1393 (N.D. Ala. 1997), *aff'd*, 140 F.3d 1043 (11th Cir.
1998) ..............................................................................4, 21

**TABLE OF AUTHORITIES–Continued**

PAGE(S)

*Denny v. Ford Motor Co.*,
  662 N.E.2d 730 (N.Y. 1995)..............................................................................13

*Diaz v. Paragon Motors of Woodside, Inc.*,
  424 F. Supp. 2d 519 (E.D.N.Y. 2006) ...........................................................18

*EBSCO Indus., Inc. v. LMN Enters., Inc.*,
  89 F. Supp. 2d 1248 (N.D. Ala. 2000)...........................................................27

*Ex parte Miller*,
  693 So. 2d 1372 (Ala. 1997)...........................................................................10

*Fassina v. CitiMortgage, Inc.*,
  No. 2:11-CV-2901-RDP, 2012 WL 2577608 (N.D. Ala. July 2, 2012)..............5

*Fed. Home Loan Corp. v. Brooks*,
  No. 2:14-CV-262-RDP, 2014 WL 5410236 (N.D. Ala. Oct. 23, 2014) .............6

*Fortson v. Best Rate Funding, Corp.*,
  602 F. App'x 479 (11th Cir. 2015) .................................................................22

*Fowler v. Goodman Mfg. Co. LP*,
  No. 2:14-CV-968-RDP, 2014 WL 7048581 (N.D. Ala. Dec. 12, 2014)...........11

*Garcia v. Chrysler Grp. LLC*,
  No. 14-cv-8926 (KBF), 2015 WL 5123134 (S.D.N.Y. Sept. 1, 2015) .............16

*Gertz v. Toyota Motor Corp.*,
  No. CV 10-1089, 2011 WL 3681647 (C.D. Cal. Aug. 22, 2011) ................13, 14

*Givens v. Rent-A-Ctr., Inc.*,
  720 F. Supp. 160 (S.D. Ala. 1988), *aff'd*, 885 F.2d 879 (11th Cir. 1989) .........21

*Guidry v. Ford Motor Co.*,
  03-1197 (La. App. 5 Cir. 2/23/04) ..................................................................18

*Hart v. Yamaha-Parts Distribs., Inc.*,
  787 F.2d 1468 (11th Cir. 1986) .........................................................................8

*Hobbs v. Gen. Motors Corp.*,
  134 F. Supp. 2d 1277 (M.D. Ala. 2001)............................................................8

iii

**TABLE OF AUTHORITIES–Continued**

PAGE(S)

*Holmes v. Behr Process Corp.*,
    No. 2:15-CV-0454-WMA, 2015 WL 7252662 (N.D. Ala. Nov. 17, 2015) ....... 20

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*,
    No. 03-4558 (HAA), 2008 WL 4126264 (D.N.J. Sept. 2, 2008) ........................ 9

*In re MyFord Touch Consumer Litig.*,
    46 F. Supp. 3d 936 (N.D. Cal. 2014) ................................................................. 9

*Indus. Chem. & Fiberglass Corp. v. Hartford Accident & Indem. Co.*,
    475 So. 2d 472 (Ala. 1985) .............................................................................. 27

*Jarrett v. Panasonic Corp. of N. Am.*,
    8 F. Supp. 3d 1074 (E.D. Ark. 2013) ............................................................... 22

*Lindsey v. Int'l Shoe Co.*,
    233 So. 2d 507 (Ala. Civ. App. 1970) ........................................................... 7, 8

*McQueen v. BMW of N. Am., LLC*,
    No. 12-06674 (SRC), 2014 WL 656619 (D.N.J. Feb. 20, 2014) ........... 16, 24, 25

*Pratt v. Colonial-Sales-Lease Rental, Inc.*,
    799 F. Supp. 1132 (N.D. Ala. 1992) ................................................................ 24

*Reed v. Pfizer, Inc.*,
    839 F. Supp. 2d 571 (E.D.N.Y. 2012) .............................................................. 13

*Rhode v. E & T Invs., Inc.*,
    29 F. Supp. 2d 1298 (M.D. Ala. 1998) .............................................................. 7

*Rhodes v. Gen. Motors Corp., Chevrolet Div.*,
    621 So. 2d 945 (Ala. 1993) ................................................................................ 7

*S. Med. Health Sys., Inc. v. Vaughn*,
    669 So. 2d 98 (Ala. 1995) .................................................................................. 6

*Sam v. Beaird*,
    685 So. 2d 742 (Ala. Civ. App. 1996) ......................................................... 22, 24

*Selby v. Goodman Mfg. Co., LP*,
    No. 2:13-CV-2162-RDP, 2014 WL 2740317 (N.D. Ala. June 17, 2014) ........... 9

\\DC - 029016/000023 - 7964008 v7

**TABLE OF AUTHORITIES–Continued**

PAGE(S)

*Tait v. BSH Home Appliances Corp.*,
No. SACV 10-711, 2011 WL 1832941 (C.D. Cal. May 12, 2011)....................14

*Thompson v. RelationServe Media, Inc.*,
610 F.3d 628 (11th Cir. 2010)..............................................................................5

*Tull Bros., Inc. v. Peerless Prods., Inc.*,
953 F. Supp. 2d 1245 (S.D. Ala. 2013) ........................................................10, 13

*Wellcraft Marine, a Div. of Genmar Indus., Inc. v. Zarzour*,
577 So. 2d 414 (Ala. 1990)...................................................................................7

STATUTES

Ala. Code § 7-2-607.................................................................................................8

Ala. Code § 8-19-10 *et seq.* ...................................................................................2

Ala. Code § 8-19-10....................................................................................20, 27, 28

Ala. Code § 8-20A-1 *et seq.*.............................................................................2, 18

Ala. Code § 8-20A-1...............................................................................................18

Ala. Code § 8-20A-2..............................................................................17, 18, 19, 20

Ala. Code § 8-20A-3...............................................................................................17

OTHER AUTHORITIES

Fed. Rule of Civ. P. 8...............................................................................................5

Fed. Rule of Civ. P. 9 .......................................................................................21, 22

v

Defendant Hyundai Motor America ("HMA") respectfully moves for an order dismissing Plaintiff's Complaint in its entirety.[1]

## PRELIMINARY STATEMENT

Plaintiff Justin Lee is disappointed because HMA will not pay to repair damage to his vehicle caused by the installation of third party aftermarket components. After purchasing a Hyundai Elantra vehicle, Plaintiff visited Defendant Precision Tune Auto Care ("Precision") and twice purchased aftermarket oil filters. Each of Plaintiff's aftermarket oil filters failed, which he alleges caused his vehicle's engine to fail.

Despite alleging that the aftermarket oil filters "were worthless," Plaintiff seeks to recover from HMA under the concocted theory that his engine is somehow defective. But there is no plausible basis for inferring that the alleged defects in Plaintiff's engine exist or caused him injury. Plaintiff seeks to hold HMA responsible for damage to his vehicle caused by allegedly defective oil filters that HMA did not design, manufacture, or sell. In doing so, Plaintiff ignores the terms of HMA's New Vehicle Limited Warranty ("Limited Warranty"), which explains

---

[1] Prior to filing the present motion to dismiss, HMA contacted the chambers of the Honorable Staci G. Cornelius to inquire about the application of the page limit for non-summary judgment motions contained in the Initial Order. HMA was informed that, because the Initial Order had not yet been entered in this case, the present motion is not subject to it.

that its coverage does not extend to aftermarket components or to failures caused by components not manufactured by HMA or its affiliates.

In spite of these terms, Plaintiff alleges that he presented his vehicle to an authorized Hyundai dealership and requested free service and repairs.  Not surprisingly, Plaintiff's request was declined.  Plaintiff then filed this putative nationwide class action, labeling that single denial of warranty coverage as deceptive in an effort to invoke statutory remedies.  The Complaint asserts three causes of action:  (1) breach of contract/warranty; (2) violation of the Alabama Motor Vehicle Lemon Law ("Lemon Law"), *see* Ala. Code § 8-20A-1 *et seq.*; and (3) violation of the Alabama Deceptive Trade Practices Act ("ADTPA"), *see* Ala. Code § 8-19-10 *et seq.*

Plaintiff's Complaint is deficient from the start as it rests on a foundation of conclusory allegations and fails to adequately allege the facts necessary in order to proceed beyond the motion to dismiss stage.  For a host of reasons, each claim should be dismissed.  First, any breach of contract claim fails because there is no allegation of a binding contract that is not duplicative of the Limited Warranty. Second, Plaintiff cannot assert an implied warranty claim as he is not in privity with HMA.  Third, the Complaint does not allege, and Plaintiff did not provide, adequate pre-suit notice of his warranty claim.  Fourth, Plaintiff has not alleged that he complied with the conditions precedent the Limited Warranty prescribes or

2

that he was denied coverage of a warrantable repair.  Fifth, Alabama law required

Plaintiff to exhaust HMA's informal dispute resolution program before bringing a

Lemon Law claim.  He did not.  Sixth, Plaintiff does not allege that he provided (i)

notice within the Lemon Law rights period or (ii) HMA with reasonable attempts

to repair his vehicle.  Seventh, the pre-suit demand letter was inadequate for the

purposes of ADTPA.  Finally, Plaintiff does not sufficiently allege that HMA's

supposedly intentional misconduct caused him to incur monetary damage.

## <u>BACKGROUND</u>

Plaintiff is a resident of Alabama who purchased a 2015 model year

Hyundai Elantra on April 14, 2015 from Jim Burke Automotive in Birmingham,

Alabama, "a Hyundai retail dealer."  *See* Compl. ¶¶ 1, 6.[2]  The Limited Warranty

accompanied this sale and promised the:

> Repair or replacement of any component originally manufactured or
> installed by Hyundai Motor Company, Hyundai Motor Group,
> Hyundai Motor Manufacturing Alabama . . . Kia Motors
> Manufacturing Georgia . . . or . . . HMA that is found to be defective
> in material or workmanship under normal use and maintenance[.]

Ex. A at 18.[3]  Covered repairs are provided, "without charge for parts or labor[,]"

if the customer "[d]eliver[s]" the vehicle to "an authorized Hyundai Motor

---

[2] The facts in this section are taken from the Complaint and assumed to be true for
the purposes of this motion only.

[3] The Court may consider the Limited Warranty, even though it "was not attached
as an exhibit to plaintiff['s] complaint," without converting the motion to dismiss

American Dealer" within the warranty period, *i.e.* "5 years from the date of original retail delivery or date of first use, or 60,000 miles, whichever occurs first." *Id.* at 18-21.

Plaintiff alleges that, before experiencing any issues with his vehicle, Precision installed an aftermarket oil filter. *See* Compl. ¶¶ 9, 10. On some unspecified later date, Plaintiff's vehicle allegedly stalled, "emitted a knocking/tapping sound and lost power." *Id.* ¶ 11. The aftermarket filter "failed completely" and the vehicle's engine "failed partially." *Id.*

Plaintiff returned to Precision and purchased another aftermarket oil filter, which subsequently failed again, along with the vehicle's engine. *See id.* ¶ 14. Plaintiff then had his vehicle towed to Serra Hyundai, an independent, authorized Hyundai dealership. *See id.* ¶¶ 15, 17. There, unidentified individuals told him that he would need to pay to replace an engine rod. *See id.* Plaintiff does not reveal (i) the date of this visit, (ii) the mileage on his vehicle at the time, or (iii) whether or not he had the recommended repair performed. Yet, in an effort to show that his alleged experience was related to supposedly known defects, the Complaint "incorporates by reference" a recall report related to an entirely different Hyundai model vehicle, *id.* ¶ 7(i); Ex. B, and a 2005 Technical Service

into one for summary judgment because "it was referenced in the complaint . . . and is integral to some of plaintiff['s] claims." *Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1397 (N.D. Ala. 1997), *aff'd*, 140 F.3d 1043 (11th Cir. 1998).

\\DC - 029016/000023 - 7964008 v7

Bulletin ("TSB") that describes an issue, other than the engine failure Plaintiff allegedly experienced, that may arise from the use of aftermarket oil filters, *see* Compl. ¶ 16; Ex. C.  On January 11, 2016, Plaintiff mailed a letter to the defendants regarding an anticipated ADTPA claim.  *See* Ex. D.[4]

On January 28, 2016, Plaintiff filed his Complaint, which seeks warranty coverage and other relief for allegedly undisclosed engines and oil filter defects. *See* Compl. § IV.  Plaintiff's claims are asserted on behalf of two putative nationwide classes of (i) owners and lessees of 2011 or later model year Elantras and (ii) individuals "who purchased an aftermarket oil filter and oil change services from Precision" for 2011 or later model year Elantras.  *See Id.* § III.

## <u>STANDARD OF REVIEW</u>

"In considering a motion to dismiss, [the Court should] accept all well-pleaded facts as true, and . . . make all reasonable inferences in favor of the plaintiff."  *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 631 n.5 (11th Cir. 2010).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Federal Rule of Civil Procedure 8 "does not unlock the

---

[4] Although the Complaint does not reference this letter, HMA has attached it as an exhibit as a courtesy to Plaintiff because this letter is integral, indeed a statutory prerequisite, to one or more of his claims.  But the Court is nonetheless free to disregard its content.  *See Fassina v. CitiMortgage, Inc.*, No. 2:11-CV-2901-RDP, 2012 WL 2577608, at *7 n.15 (N.D. Ala. July 2, 2012) (declining to consider a letter at the motion to dismiss stage).

\\DC - 029016/000023 - 7964008 v7

doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.  Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ARGUMENT

### I. Plaintiff Fails to State a Breach of Contract/Warranty Claim.

Count Two is labeled "Breach of Contract/Warranty," but it is unclear if Plaintiff intends to pursue a claim for breach of contract, implied warranty, or express warranty.  Regardless of how this Court interprets Count Two, it is deficient and should be dismissed.

#### A. Any Claims for Breach of Contract Fail As a Matter of Law.

To the extent that Count Two asserts a breach of contract, Plaintiff does not allege "the existence of a valid contract binding" himself and HMA.  *S. Med. Health Sys., Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995) (citations omitted).  This omission alone is fatal to any breach of contract claim.  *See Fed. Home Loan Corp. v. Brooks*, No. 2:14-CV-262-RDP, 2014 WL 5410236, at *3 (N.D. Ala. Oct. 23, 2014) (dismissing for failure to allege the existence of a binding contract).  Moreover, the Complaint's relevant allegations relate only to HMA's "warranty agreements."  *See* Compl. ¶¶ 6, 17.  Any breach of contract claim is identical to,

and should be dismissed as duplicative of, Plaintiff's express warranty claim.  *See Rhode v. E & T Invs., Inc.*, 29 F. Supp. 2d 1298, 1302 (M.D. Ala. 1998) (granting summary judgment on a contract claim where the plaintiff "alleged that the warranty is the contract[]" and there were "no separate provisions in the contract other than those contained in the warranty[]").

### B. Any Claims for Implied Warranty Fail As a Matter of Law.

Any claim for breach of implied warranty also is deficient.  "There is no right of action on an implied warranty theory against a *manufacturer* for property damage without privity of contract[.]"  *Wellcraft Marine, a Div. of Genmar Indus., Inc. v. Zarzour*, 577 So. 2d 414, 419 (Ala. 1990) (emphasis in original); *see also Rhodes v. Gen. Motors Corp., Chevrolet Div.*, 621 So. 2d 945, 947 (Ala. 1993) (dismissing implied warranty claim where "[the defendant] was the manufacturer of the automobile, and [a dealership] was the seller").  Plaintiff was not in contractual privity with HMA as he allegedly purchased his vehicle from "Jim Burke Automotive in Birmingham, Alabama," an independent automotive dealership.  Compl. ¶ 6.  His implied warranty claim should thus be dismissed.[5]

---

[5] As explained further *infra* at Section I(C)(1), Plaintiff's implied warranty claim also is barred by the absence of pre-suit notice.  *See Lindsey v. Int'l Shoe Co.*, 233 So. 2d 507, 508 (Ala. Civ. App. 1970) (sustaining demurrer of implied warranty claim after finding "the averment of notice to be insufficient").

\\DC - 029016/000023 - 7964008 v7

## C. Any Claims for Express Warranty Fail As a Matter of Law.

For four reasons, the Complaint fails to state an express warranty claim.

First, the Complaint does not allege, and Plaintiff did not provide, adequate pre-suit notice of this claim.  Second, Plaintiff misunderstands the scope of the Limited Warranty when he alleges that it was breached simply because his vehicle malfunctioned.  Third, the Complaint plausibly alleges only that Plaintiff sought coverage of non-warranted repairs or replacements.  Fourth, Plaintiff does not adequately allege that he sought coverage within the warranty period.

### 1. Plaintiff does not allege he provided the required pre-suit notice.

Plaintiff did not allege or provide adequate, pre-suit notice.  Before bringing a breach of express warranty claim, a "buyer must . . . notify the seller of breach or be barred from any remedy[.]"  Ala. Code § 7-2-607(3)(a).  This requirement applies to remote warrantors, like HMA, that do not sell directly to consumers.  *See Hobbs v. Gen. Motors Corp.*, 134 F. Supp. 2d 1277, 1284-85 (M.D. Ala. 2001).  In the absence of certain exceptions not relevant here, notice is a "condition precedent to bringing a breach of warranty action" and "must be affirmatively pleaded in the complaint."  *Hart v. Yamaha-Parts Distribs., Inc.*, 787 F.2d 1468, 1474 (11th Cir. 1986); *see also Lindsey*, 233 So. 2d at 509 (explaining that "the giving of notice . . . must be pled with some degree of specificity").  That Plaintiff failed to plead he provided pre-suit notice to HMA requires dismissal of his warranty claim.

Even overlooking the absence of an explicit allegation, nothing suggests Plaintiff provided adequate notice to HMA.  Under Alabama law, neither the filing of the Complaint, *see In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 974-75 (N.D. Cal. 2014), nor HMA's generalized knowledge of the alleged defects, *see In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, No. 03-4558 (HAA), 2008 WL 4126264, at *8 (D.N.J. Sept. 2, 2008), nor Plaintiff's alleged request for repairs from Serra Hyundai, *see Selby v. Goodman Mfg. Co., LP*, No. 2:13-CV-2162-RDP, 2014 WL 2740317, at *3 (N.D. Ala. June 17, 2014), is sufficient.

Were Plaintiff to argue that his January 11, 2016 letter provides the requisite notice, it too falls short as it does not assert a breach of the Limited Warranty—nor does it even allege that Plaintiff unsuccessfully sought repairs pursuant to the Limited Warranty.  *See* Ex. D.  Plaintiff has not provided what Alabama law requires:  "notice of the alleged *breach of warranty*[]" with respect to repairs of his vehicle.  *Selby*, 2014 WL 2740317, at *3 (emphasis in original).  Plaintiff's express warranty claim should thus be dismissed.

### 2.  Plaintiff fails to allege that the Limited Warranty promised a vehicle that would never need repairs.

To the extent that Plaintiff alleges that the Limited Warranty was breached when Plaintiff's vehicle purportedly malfunctioned and needed repairs, Plaintiff has failed to allege a breach of the Limited Warranty.  "A manufacturer's liability

9

for breach of an express warranty derives from, and is measured by, the terms of that warranty." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 525 (1992); *accord Tull Bros., Inc. v. Peerless Prods., Inc.*, 953 F. Supp 2d 1245, 1257 (S.D. Ala. 2013). As a result, "[w]hen a warrantee brings a breach of express warranty claim, the terms of the written warranty control." *Culberson v. Mercedes-Benz USA, LLC*, 616 S.E.2d 865, 867 (Ga. Ct. App. 2005) (citations omitted); *see also Ex parte Miller*, 693 So. 2d 1372, 1376 (Ala. 1997) ("Express warranties should be treated like any other type of contract and interpreted according to general contract principles. . . . In Alabama, the crux of all express warranty claims is that the goods did not conform to the warranty.") (citations omitted).

HMA's Limited Warranty promises the:

> Repair or replacement of any component originally manufactured or installed by Hyundai Motor Company, Hyundai Motor Group, Hyundai Motor Manufacturing Alabama . . . Kia Motors Manufacturing Georgia . . . or . . . HMA that is found to be defective in material or workmanship under normal use and maintenance[.]

Ex. A at 18. The plain language contradicts Plaintiff's contention that HMA promised to provide a new automobile that would never malfunction and to warrant its performance. *See* Compl. ¶ 23. Indeed, the Limited Warranty contemplated that some components could be found to be defective, but promised to repair or replace them. For this reason, the Limited Warranty was not breached when Plaintiff received a vehicle that allegedly malfunctioned and needed repairs.

*See Fowler v. Goodman Mfg. Co. LP*, No. 2:14-CV-968-RDP, 2014 WL 7048581, at *6 (N.D. Ala. Dec. 12, 2014) ("The Alabama Supreme Court has held that the language of an express warranty to repair cannot be construed as a representation that a product is free of defects.") (citations omitted).

### 3. Plaintiff does not adequately allege that the repairs he sought were covered under the terms of the Limited Warranty.

For two reasons, the Complaint does not adequately allege that Plaintiff properly sought coverage for a warranted repair.

First, the Complaint's allegations plausibly suggest only that the alleged engine issues were caused by problems with the aftermarket oil filters, and not by defects in components installed by HMA or its affiliates.  *See* Ex. A at 18 (promising to "[r]epair or replace[ ] any component originally manufactured or installed" by HMA and its affiliates "that is found to be defective in material or workmanship").[6]  Plaintiff also alleges that certain components in the vehicle's engine were defective, *see* Compl. ¶ 7, but as discussed *infra* at Section III(B)(3), Plaintiff offers only conclusory allegations to support this theory and none of the documents referenced in the Complaint support the inference that the alleged

---

[6] To the extent Plaintiff seeks warranty coverage for the aftermarket filters themselves, these components were installed by Precision, *see* Compl. ¶¶ 11, 14, and Plaintiff is not entitled to free replacement of components "that the [Limited] Warranty . . . by its very terms . . . did not cover."  *Fowler*, 2014 WL 7048581, at *6.

engine defects existed in Plaintiff's vehicle when it was sold or that they caused any injury.  Nor do Plaintiff's alleged experiences with his vehicle reasonably suggest anything other than a defect only in the aftermarket oil filters.  It was only after purchasing these filters that Plaintiff's vehicle experienced any alleged issues. *See* Compl. ¶¶ 11, 14.  By the time Plaintiff sought service at an authorized Hyundai dealer, both filters had already "failed completely[,]" allegedly causing additional damage to the vehicle's engine.  *Id.*

Plaintiff's reliance on the TSB referenced in the Complaint provides further confirmation that his concern lies with the aftermarket filters themselves.  The TSB relates to an issue that is caused by "the use of an aftermarket oil filter."  Ex. C.  In fact, it is the very differences in "materials, construction and specifications" between aftermarket filters and "genuine Hyundai oil filters[]" warranted by HMA that can lead to an issue.  *Id.*  To rectify it, the TSB identifies a simple fix: "replace the aftermarket oil filter with a genuine Hyundai oil filter."  *Id.*

In short, Plaintiff does not allege facts supporting the inference that components in his vehicle that were installed by HMA and its affiliates were defective.  Instead, his experience plausibly suggests only that the alleged issues with his vehicle were caused by third-party components.

Second, assuming *arguendo* that the Complaint can be read to allege that the purported engine issues were attributable to components installed by HMA or its

affiliates, these engine issues relate to alleged design defects that fall outside the scope of the Limited Warranty.  HMA promised to repair or replace any covered component that "is found to be defective in material or workmanship under normal use and maintenance[.]"  Ex. A at 18.  Components that require replacement because of some reason other than a defect in material and workmanship are not covered.  "In design defect cases, the alleged product flaw arises from an intentional decision by the manufacturer to configure the product in a particular way." *Denny v. Ford Motor Co.*, 662 N.E.2d 730, 735 n.3 (N.Y. 1995).  "Unlike defects in materials or workmanship, a design defect is manufactured in accordance with the product's intended specifications."  *Gertz v. Toyota Motor Corp.*, No. CV 10-1089 PSG (VBKx), 2011 WL 3681647, at *3 (C.D. Cal. Aug. 22, 2011) (citations and quotations omitted).  By contrast, a claim for defects in materials or workmanship, sometimes called a "[a] manufacturing defect claim[,] is premised on the relevant product being defective because it was not manufactured as designed."  *Reed v. Pfizer, Inc.*, 839 F. Supp. 2d 571, 577 (E.D.N.Y. 2012).

The distinction between defects in materials and workmanship and defects in design has been recognized in Alabama: "[a] written warranty against defects in materials or workmanship does *not* encompass a warranty against defects in design." *Tull Bros.,* 953 F. Supp. 2d at 1257 (emphasis in original) (citations

omitted); *see also Barko Hydraulics, LLC v. Shepherd*, 167 So. 3d 304, 318 (Ala. 2014) (Stuart, J. concurring in part and dissenting in part) (explaining that *Tull Bros.*'s holding "properly applied [the] principle" that a warranty is governed by its terms), *reh'g denied* (Nov. 21, 2014).

If anything, the Complaint plausibly alleges only a design defect. The Complaint alleges that "Hyundai redesigned the Hyundai Elantra on or around 2011[.]" Compl. ¶ 5. Consistent with this word choice, Plaintiff's theory is that all Elantra vehicles "sold and manufactured after this date" are allegedly defective in that they "have nearly *identical* engines and *the process for manufacturing said engines was substantially the same*." *Id.* (emphasis added); *see also id.* § IV (alleging that the "Hyundai Elantra engines are defective"). Thus, Plaintiff does not allege that some percentage of the Elantra vehicles contains an alleged nonconformity with HMA's specifications. Rather, "the alleged [engine] defects which give rise to Plaintiff['s] breach of warranty claim exist with respect to *all* of [2011-2015 Elantra] vehicles, not merely the particular vehicle owned by" him. *Gertz*, 2011 WL 3681647, at *3 (emphasis in original); *see also Tait v. BSH Home Appliances Corp.*, No. SACV 10-711 DOC (ANx), 2011 WL 1832941, at *3 (C.D. Cal. May 12, 2011).

Plaintiff's theory that every vehicle has the same sort of engine defect describes a design defect. Because such alleged defects fall outside the scope of

the Limited Warranty covering manufacturing defects, Plaintiff fails to state a claim for a breach of its terms.

### 4. Plaintiff does not adequately allege satisfaction of the conditions precedent the Limited Warranty prescribes.

Plaintiff fails to allege that he sought covered repairs within the warranty period.  "[A] warrantee can succeed on a breach of the warranty claim only if she has first satisfied the express conditions precedent for enforcement 'as prescribed' by the warranty." *Culberson*, 616 S.E.2d at 867.  To obtain warranty repairs, a Hyundai owner must "[d]eliver" his vehicle to "an authorized Hyundai Dealer" within the warranty period, *i.e.* "5 years from the date of original retail delivery or date of first use, or 60,000 miles, whichever occurs first."  Ex. A at 18-21.[7]

Plaintiff makes no effort to plead compliance with these conditions precedent.  Specifically, Plaintiff omits necessary details regarding his only alleged service visit to Serra Hyundai.  *See id.* ¶ 15.[8]  The Complaint does not reveal the date of this alleged visit, nor does it provide the mileage on the vehicle at the time.

---

[7] Although he does not specify which provision of which warranty was allegedly breached, Plaintiff's repairs would likely be covered, if at all, under the Limited Warranty, as opposed to the Powertrain Limited Warranty—which "begin[s] upon expiration of[,] the 5 year/60,000 mile . . . Limited Warranty[.]"  *Id.* at 22.  Thus, HMA will focus its discussion on the Limited Warranty.

[8] Because Plaintiff does not allege—nor could he—that Precision is an authorized Hyundai dealer, the alleged services it performed are ineligible under the Limited Warranty's terms.  *See* Compl. ¶¶ 9, 13, 14.  The Limited Warranty specifically states that its terms "will not apply to warranty service performed by [a dealership] other than an authorized Hyundai Dealer."  Ex. A at 21.

The absence of these specifics prevents the reader from calculating whether the alleged repairs fall within the warranty period. *Cf. Century 21-Reeves Realty, Inc. v. McConnell Cadillac, Inc.*, 626 So. 2d 1273, 1275 (Ala. 1993) ("[T]he express GM limited warranties covering the automobile had expired by the time the engine failed."), *overruled by Hines v. Riverside Chevrolet-Olds, Inc.*, 655 So. 2d 909 (Ala. 1994).  In similar circumstances, courts have dismissed claims against manufacturers and distributors for failure to plead compliance with the express warranties' temporal and mileage limitations. *See e.g.*, *Garcia v. Chrysler Grp. LLC*, No. 14-cv-8926 (KBF), 2015 WL 5123134, at *12 (S.D.N.Y. Sept. 1, 2015); *McQueen v. BMW of N. Am., LLC*, No. 12-06674 (SRC), 2014 WL 656619, at *5 (D.N.J. Feb. 20, 2014).  This Court should do the same.

## II. Plaintiff's Claim Pursuant to the Lemon Law Should Be Dismissed.

For three reasons, Plaintiff's Lemon Law claim should be dismissed.  First, the Complaint does not plausibly allege any nonconformance with an express warranty as required to give rise to a Lemon Law claim.  Second, Plaintiff failed to exhaust HMA's informal dispute resolution program before bringing a Lemon Law claim.  Third, Plaintiff does not allege that he provided (i) notice within the lemon law rights period or (ii) HMA with reasonable attempts to repair his vehicle.

**A. The Complaint Does Not Adequately Allege Any Nonconformance.**

As discussed *supra* at Section I(C)(3), the Complaint's allegations plausibly suggest only that the supposed engine issues were caused by problems with the aftermarket oil filters, and not by defects in components installed by HMA or its affiliates.  As a result, the alleged issues fall outside the terms of the Limited Warranty.  Because a Lemon Law claim arises only if a vehicle "does not conform to any applicable express warranty," Ala. Code § 8-20A-2(a), this claim falls with Plaintiff's express warranty claim.

**B. Plaintiff Did Not Exhaust the Informal Dispute Resolution Program.**

Before filing a cause of action, the Lemon Law requires that "a consumer . . . first exhaust any remedy afforded" by "an informal dispute settlement procedure" that a manufacturer establishes "in compliance with federal rules and regulations[.]" Ala. Code § 8-20A-3(a).  HMA has arranged for BBB Auto Line to offer consumers a non-binding, Alternative Dispute Resolution (arbitration) program.  *See* Ex. A. at 12-14, 17.  This program is provided "at no cost to" HMA's customers and generally results in a decision "within 40 days" of a customer submitting a claim form.  *Id.* (emphasis in original).  In the Limited Warranty, customers are informed that they "must . . . use BBB AUTO LINE if [they] are seeking remedies under the 'Lemon Laws' of" those states that require exhaustion.  *Id.* at 13, 17.  Alabama is one such state.  But Plaintiff has not alleged,

nor could he, that he exhausted the informal dispute procedure HMA made available prior to filing suit.  Courts have repeatedly required plaintiffs asserting lemon law claims under analogous state statutes to avail themselves of retailers' and manufacturers' informal dispute procedures.  *See e.g.*, *Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 537-40 (E.D.N.Y. 2006) (granting summary judgment for failure to exhaust a retailer's informal and non-binding dispute resolution procedures); *Guidry v. Ford Motor Co.*, 03-1197 (La. App. 5 Cir. 2/23/04); 868 So. 2d 945, 948 (requiring that, "prior to filing suit [under the Louisiana lemon law], the consumer must first resort to the manufacturer's informal dispute settlement procedure").  This Court should do the same.

### C. The Complaint Does Not Adequately Allege a Lemon Law Violation.

The Lemon Law provides consumers with two general categories of remedies upon the satisfaction of certain preconditions.  *See generally* Ala. Code § 8-20A-1 *et seq.*  To trigger the first category—a manufacturer's obligation to make repairs—a consumer must "deliver[] the motor vehicle to the manufacturer, its agent, or its authorized dealer, and give[] notice of the nonconforming condition during the lemon law rights period[.]"  *Id.* § 8-20A-2(a).  The Lemon Law rights period is defined as "[t]he period ending one year after the date of the original delivery of a motor vehicle to a consumer or the first 12,000 miles of operation, whichever first occurs."  *Id.* § 8-20A-1(8).  For the same reason that it is

impossible to determine whether Plaintiff sought coverage within the warranty period, *see supra* at Section I(C)(4), the reader cannot infer whether Plaintiff provided adequate notice within the Lemon Law rights period because the Complaint does not allege the mileage on the vehicle at the time of Plaintiff's visit to Serra Hyundai or the date of the visit.

In certain circumstances, the Lemon Law also allows a consumer to receive a replacement vehicle or a refund of the purchase price. To qualify, a consumer must offer the manufacturer, its agent, or its authorized dealer "reasonable attempts" to repair the defective vehicle. *Id.* § 8-20A-2(b). The statute provides that a presumption that "reasonable attempts" have been provided can arise in two ways.

First, it can arise if the same vehicle has been repaired "three or more times by the manufacturer, its agents or its authorized dealers, at least one of which occurred during the lemon law rights period, plus a final attempt by the manufacturer, and the same nonconforming condition continues to exist." *Id.* § 8-20A-2(c)(1). Although this provision contemplates that HMA should have been allowed four repair attempts, Plaintiff has alleged, at most, that he, on some unknown date, offered Serra Hyundai one repair attempt. *See* Compl. ¶ 15.

Second, a presumption also can arise if "[t]he motor vehicle is out of service and in the custody of the manufacturer, its agent, or an authorized dealer due to

\\DC - 029016/000023 - 7964008 v7

repair attempts (including the final repair attempt), one of which occurred during the lemon law rights period, for a cumulative total of 30 calendar days[.]"  Ala. Code § 8-20A-2(c)(2).  Because the Complaint does not allege the duration of the vehicle's alleged stay at Serra Hyundai, the reader is prevented from drawing any conclusion regarding whether this condition is met.

Thus, Plaintiff has not alleged, much less provided a basis for inferring, that he provided (i) notice within the Lemon Law rights period or (ii) "reasonable attempts" to repair his vehicle.  His Lemon Law claim should thus be dismissed.

### III.   Plaintiff's ADTPA Claim Should Be Dismissed.

#### A. Plaintiff Did Not Comply with the Pre-Suit Demand Requirement.

As with the express warranty claim, Plaintiff did not comply with the pre-suit notice requirement for his ADTPA claim.  Before bringing an ADTPA claim, a plaintiff must mail "a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered[.]" Ala. Code § 8-19-10(e).  As "a condition precedent to filing a suit under the ADTPA[,]" a plaintiff should plead compliance with the pre-suit demand requirement. *Holmes v. Behr Process Corp.*, No. 2:15-CV-0454-WMA, 2015 WL 7252662, at *2 n.2 (N.D. Ala. Nov. 17, 2015) (citations omitted). Plaintiff did not do so in the Complaint.  Even if the Court were to overlook this omission—and take notice of Plaintiff's letter, *see* Ex. D—his claim would still be

deficient as the letter does not "reasonably describe . . . the injury suffered." *Givens v. Rent-A-Ctr., Inc.*, 720 F. Supp. 160, 162 (S.D. Ala. 1988), *aff'd*, 885 F.2d 879 (11th Cir. 1989); *see also Deerman*, 955 F. Supp. at 1399-400 (dismissing for "failure to reasonably describe the unfair or deceptive practice in a timely letter"). While it describes generally two alleged defects supposedly common to all Elantra vehicles and requests various forms of relief, the letter does not represent that the alleged defects manifested in Plaintiff's vehicle or that he was forced to expend money to address them. Because Plaintiff has failed to satisfy the pre-suit demand requirement, the ADTPA claim should be dismissed.

### B. Plaintiff Has Failed to State an ADTPA Claim.

Plaintiff's ADTPA claim also fails to state a claim for four reasons. First, Rule 9(b) of the Federal Rules of Civil Procedure applies to this claim, and Plaintiff has not satisfied its requirements. Second, the allegations in the Complaint regarding HMA's supposed misrepresentations lack necessary details, relate to non-actionable statements, or both. Third, the Complaint does not adequately allege that HMA had knowledge of the information it supposedly omitted or that its omission caused Plaintiff's alleged injury. Fourth, Plaintiff does not adequately allege monetary damages as required by ADTPA.

## 1.  Rule 9(b) applies to Plaintiff's ADTPA claim.

As an initial matter, this claim sounds in fraud and should thus be pled with particularity to comply with Rule 9(b) of the Federal Rules of Civil Procedure.  *See* Compl. ¶¶ 20-21 (alleging that HMA "[f]ailed to disclose[,]" "concealed[,]" or "misrepresented[,]" information about Plaintiff's vehicle at the time of sale or "[o]therwise deceptively sold known defective products").  Indeed, in *Cooper v. Bristol-Myers Squibb Co.*, No. 07-885 (FLW), 2009 WL 5206130, at \*7 & n.7 (D.N.J. Dec. 30, 2009), a federal district court applied Rule 9(b) to an ADTPA claim that sounded in fraud.  The result in *Cooper* is consistent with (i) the purpose of ADTPA, which was "intended to replace the common law and statutory actions for fraud . . . in specifically designated situations[,]" *Sam v. Beaird*, 685 So. 2d 742, 744 (Ala. Civ. App. 1996), and (ii) the decisions of the Eleventh Circuit and federal courts applying Rule 9(b) to other statutory claims that sound in fraud, *see e.g.*, *Fortson v. Best Rate Funding, Corp.*, 602 F. App'x 479, 482 (11th Cir. 2015) (per curiam) (Georgia's RICO statute); *Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1074, 1084 (E.D. Ark. 2013) (Arkansas Deceptive Trade Practices Act).

## 2.  The allegations related to the misrepresentations concern non-actionable statements or are inadequately pled.

Under any pleading standard, however, Plaintiff's theories regarding HMA's alleged misconduct are deficient.  For instance, Plaintiff alleges that HMA "[r]epresented said Elantra was of new and of good quality and standard" when it

22

allegedly was not and "misrepresented that a warranty or guarantee would cover repairs for the known defects [.]"  Compl. ¶ 21(a)-(b).  Yet, taking the second representation first, the Complaint has not adequately alleged that HMA breached the Limited Warranty by failing to provide coverage under its terms.  *See supra* at Section I.  Any alleged misrepresentation related to such coverage must likewise fail.

With respect to the other alleged representations, the Complaint omits information regarding who at HMA allegedly communicated with Plaintiff, when any such communication purportedly occurred, or what exactly the substance of the alleged communication was.  *See Bodie v. Purdue Pharma Co.*, 236 F. App'x 511, 524 (11th Cir. 2007) (explaining that "the plaintiff alleging fraud or misrepresentation must set forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same; and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.") (internal quotations and citation omitted).  More fundamentally, there is no basis for inferring that any representation regarding Plaintiff's Elantra being "new" was in fact untrue.  As such, these allegations are "conclusory" and should be disregarded.  *Iqbal*, 556 U.S. at 678 (citation omitted).

Moreover, "[a]ny assertions by [HMA] regarding the good quality of the vehicle were mere puffery" and are not actionable.  *Pratt v. Colonial-Sales-Lease Rental, Inc.*, 799 F. Supp. 1132, 1135 (N.D. Ala. 1992) (citation omitted).

### 3. The Complaint does not adequately allege that HMA had knowledge of the information it supposedly omitted or that its omission caused Plaintiff's alleged injury.

HMA's remaining alleged misconduct relates to the supposed concealment and failure to disclose "at the time of the sale" information regarding two alleged defects.[9]  Compl. ¶¶ 7, 19, 20, 21(c)-(d).  Knowledge by HMA is a prerequisite to each of these types of alleged misconduct.  That "some knowledge of false or deceptive conduct on the part of the wrongdoer" is required also "is evident from . . . language [of] ADTPA[.]"  *Sam*, 685 So. 2d at 744.  In support of HMA's alleged knowledge, Plaintiff relies on three sets of allegations.  Each is deficient.

First, Plaintiff relies on three paraphrased "NHTSA complaints[.]"  Compl. ¶ 37.  But Reliance on these anonymous internet postings is unavailing as there is no indication they were shared with HMA.  *See McQueen*, 2014 WL 656619, at *4 ("[W]hat consumers told the [National Highway Traffic Safety Administration ("NHTSA")] about their [vehicles] tells the Court nothing about what BMW knew

---

[9] Although the Complaint alleges three, distinct supposed defects, HMA does not understand Plaintiff to be contending that HMA should have disclosed information related to the so-called "oil filter defect[,]" which allegedly exists in oil filters provided by Precision, after the sale of the vehicle, and is referenced in a TSB circulated by the Filter Manufacturer's Council that does not mention HMA.  *See* Compl. ¶¶ 11-14.

\\DC - 029016/000023 - 7964008 v7

about [the] vehicles[.]").  They relate entirely to 2013 model year vehicles,

whereas Plaintiff's vehicle is a 2015 model year vehicle.  Two of the postings are

"of no moment . . . since [they] post-date[] Plaintiff's purchase of h[is] vehicle[.]"

*Id.* at *4 n.9.

Second, with respect to the so-called "metal debris defect[,]" Plaintiff points

to a recall report that was submitted to NHTSA.  Compl. ¶ 7(i).  However, that

report relates to an entirely different vehicle model—Sonatas—from the one at

issue in this case—Elantras.  *See* Ex. B at 1.  Moreover, the report concerns only

2011and 2012 Sonatas, three model years prior to Plaintiff's 2015 Elantra.  *Id.*

Despite the clear inapplicability of the report to this case, Plaintiff would have the

Court draw an inference that, simply because both models are allegedly

manufactured in the same factory and supposedly "the process for manufacturing

and cleaning [the] engines was substantially the same[,]" any issues with Sonatas

must necessarily also manifest in the Elantras.  *See* Compl. ¶ 7(i).  Because

Plaintiff does not reveal the basis for these two unsupported allegations, they are

"conclusory" and insufficient under any pleading standard.  *Iqbal*, 556 U.S. at 678

(citation omitted).  Even if they were not, HMA instituted a "wet blast" cleaning

process in April 2012 that "corrected" the issue with the Sonatas long before

Plaintiff purchased his Elantra in 2015.  Ex. B at 3.  Thus, the report does not

plausibly suggest that HMA knew of the alleged metal debris defect in the Elantras at the time Plaintiff purchased his vehicle.

Third, Plaintiff references a TSB related to the so-called "over pressurized engine defect[.]"  Compl. ¶¶ 7(ii), 16.  Yet, the TSB relates to vehicles not at issue here, and the issue described by the TSB results in a "knocking noise[,]" not the alleged engine failure complained about by Plaintiff.  Ex. C.  The TSB should not be used to impute to HMA knowledge of an allegedly "widespread consumer problem" that is different from the issue described in the TSB and that is supposedly inherent in vehicles that were produced almost a decade after the TSB was issued.  Compl. § VII.  TSBs "are generally the result of consumer complaints that cause a manufacturer to investigate, diagnose, and remedy a defect in one of its products[,]" and, consequently, "[a]ccepting these advisories as a basis for consumer fraud claims . . . may discourage manufacturers from responding to their customers in the first place."  *Chan v. Daimler AG*, No. 11-5391 (JLL), 2012 WL 5827448, at *7 (D.N.J. Nov. 9, 2012) (quotations and citations omitted); *see also Am. Honda Motor Co. v. Superior Court*, 132 Cal. Rptr. 3d 91, 100 (Ct. App. 2011) ("A TSB is not and cannot fairly be construed by a trial court as an admission of a . . . defect, because TSB's are routinely issued to dealers to help diagnose and repair typical complaints.").

Moreover, the TSB describes an issue caused by "the use of an aftermarket oil filter[,]" Ex. C—not by any alleged conduct of HMA.  *See* Ala. Code § 8-19-10(a) (requiring, as a condition of liability, that the defendant "causes monetary damage to a consumer"); *see also supra* at Section I(C)(3).

Plaintiff cannot avoid this reality by demanding that HMA provide additional warnings—beyond those already in the Limited Warranty, *see* Ex. A at 18—regarding the potential consequences of vehicle owners having third parties install aftermarket components.  Such a rule would make HMA responsible for the actions of parties beyond its control.  *Cf. Indus. Chem. & Fiberglass Corp. v. Hartford Accident & Indem. Co.*, 475 So. 2d 472, 476 (Ala. 1985) (per curiam) ("It is fair to hold the manufacturer . . . liable for bodily injury caused by a defect in the product, even though the product has been changed, *if* the injury was not caused by the change.") (emphasis added).  Moreover, it would effectively disregard ADTPA's requirement that the defendant "cause[] monetary damage to a consumer[.]"  Ala. Code § 8-19-10(a).  Thus, Plaintiff's claim should be dismissed because any injury Plaintiff suffered was plausibly caused only by factors other than HMA's conduct.  *See Cooper*, 2009 WL 5206130, at *9 (dismissing ADTPA claim for failure "to allege any specific facts establishing a connection between the alleged conduct of Defendants and the alleged injury claimed"); *EBSCO Indus.,*

27

*Inc. v. LMN Enters., Inc.*, 89 F. Supp. 2d 1248, 1266 (N.D. Ala. 2000) (granting summary judgment on ADPTA claim where the defendants deceived no one).

### 4.  Plaintiff fails to adequately allege monetary damage.

Finally, Plaintiff does not adequately allege that he suffered "monetary damage[.]"  Ala. Code § 8-19-10(a); *Billions v. White & Stafford Furniture Co.*, 528 So. 2d 878, 880 (Ala. Civ. App. 1988) (granting judgment where there was "no showing . . . that [the plaintiff] suffered any monetary damages as a result of [the defendant's] error").  Although he alleges that vehicle "owners" were "required . . . to pay thousands of dollars for engine repair[,]"  Compl. § IV, that is insufficient without an allegation that Plaintiff himself expended money.

### <u>CONCLUSION</u>

For all of the reasons set forth herein, HMA's motion to dismiss should be granted, and Plaintiff's Complaint should be dismissed.

Dated:        March 30, 2016              Respectfully submitted,


By:  s/ Wesley B. Gilchrist

Harlan I. Prater, IV
Wesley B. Gilchrist
Robert Jackson "Jay" Sewell
LIGHTFOOT FRANKLIN & WHITE LLC
400 20th Street North
Birmingham, Alabama 35203
Telephone: (205) 580-0700
E-mail: hprater@lightfootlaw.com
E-Mail: wgilchrist@lightfootlaw.com
E-Mail: jsewell@lightfootlaw.com

28

Michael L. Kidney*
James W. Clayton*
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004
Telephone: (202) 637-5600
E-mail: michael.kidney@hoganlovells.com
E-mail: james.clayton@hoganlovells.com
* *pro hac vice* pending

*Attorneys for Defendant Hyundai Motor America*

## Certificate of Service

I hereby certify that on March 30, 2016, a true and correct copy of the foregoing was electronically filed with the clerk of the Court using CM/ECF and served via the Court's Electronic Filing System upon the following counsel of record:

Lee W. Loder
LODER PC
P O Box 13545
Birmingham, AL 35202-3545
Telephone: (205) 326-0566
E-mail: loderlawfirm@aol.com

Lindsay P. Hembree
Steve R. Burford
SIMPSON MCMAHAN GLICK & BURFORD PLLC
2700 Highway 280
Suite 203W
Birmingham, AL 35223
Telephone: (205) 876-1600
Fax: 205-876-1616
E-mail: lphembree@smgblawyers.com
E-mail: srburford@smgblawyers.com

s/ Wesley B. Gilchrist