UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JUSTIN LEE,     } | |
|                 } | |
| Plaintiff,      } | |
|                 } | |
| v.              } | Case No.:  2:16-cv-00159-RDP |
|                 } | |
| HYUNDAI MOTOR AMERICA, INC., et } | |
| al.,            } | |
|                 } | |
| Defendants.     } | |

## MEMORANDUM OPINION

### I.     Introduction

This case is before the court on Defendant Precision Tune Auto Care's Motion to Dismiss for Lack of Personal Jurisdiction, or Alternatively, for Failure to State a Claim (Doc. # 9), filed February 25, 2016.  The Motion is fully briefed.  (Docs. # 10, 16, 19).  Also, before the court are Plaintiff's First Amended Motion to Stay Defendant Precision's Motion to Dismiss/Summary Judgment with Leave to Conduct Limited Discovery (Doc. # 20) and Motion to Strike (Doc. # 21), both filed March 28, 2016.  Precision Tune Auto Care ("Precision") filed opposition briefs. (Docs. # 26, 27).  For the following reasons, Plaintiff's Motions are due to be denied and Precision's Motion is due to be granted.

### II.    Background and Procedural History

On January 28, 2016, Plaintiff filed his Complaint on behalf of himself and two proposed Alabama and Nationwide putative classes.[1]  (Doc. # 1).  He alleges the following facts.

---

[1] The two proposed putative classes are: (1) "[a]ll purchasers, owners or lessees of 2011 or later model Hyundai Elantras", and (2) every person who purchased an aftermarket oil filter and oil change services from "Precision Tune Auto Care" for Hyundai Elantra models from 2011 to the date of filing.  (Doc. # 1).

Defendants Hyundai Motor America, Inc. ("HMA") and Precision sold defective aftermarket oil filters to owners of Hyundai Elantras, and refused to provide refunds and honor warranties related to engine failure, allegedly related to the claimed defects. (*Id.*). HMA's principal place of business is located in California. (*Id.* at ¶ 2). Precision's principal place of business is located in Virginia. (*Id.* at ¶ 3; Doc. # 10). Plaintiff is an Alabama resident. (Doc. # 1 at ¶ 1).

HMA manufactured the Elantra model automobile in its Montgomery, Alabama plant, starting in 2011. (Doc. # 1 at ¶¶ 5, 7(i)). All Elantra models 2011 and later have a "nearly identical" engine and undergo "substantially the same" manufacturing process. (*Id.* at ¶ 5). Plaintiff purchased his Elantra from an auto dealer in Birmingham, Alabama, on April 14, 2015. (*Id.* at ¶ 6). The Elantra's oil filter allegedly was heavily taxed under pressure due to engine part and other defects. (*See id.* at ¶ 7(ii)).

HMA "never prohibited" Plaintiff from using aftermarket oil filters and services from third-party auto service companies. (Doc. # 1 at ¶ 8). On September 17, 2015, Precision serviced Plaintiff's Elantra. (*Id.* at ¶ 9). Precision purportedly provides a national warranty for its oil filter products and services. (*Id*. at ¶ 10).

Plaintiff contends that after Precision serviced his car it stalled and spewed oil from the engine, the oil filter failed completely, and then the engine partially failed. (Doc. # 1 at ¶ 11). "Precision's service technician explained he was aware of the filter and engine defect," and "expressed a concern" about the effectiveness of aftermarket filters on HMA-manufactured engines. (*Id.* at ¶ 13). The technician blamed HMA. (*Id.*). Precision then sold Plaintiff another "useless" oil filter and service, but that soon failed and caused the engine to completely fail. (*Id.* at ¶ 14). HMA later blamed Precision for the problems. (*Id.* at ¶ 17). Both HMA and Precision have denied warranty service under warranty agreements they issued. (*Id.*). Additionally,

Plaintiff has referenced three National Highway Traffic Safety Administration complaints (from Virginia, Maine, and New Jersey) as a basis for the class claims. (Doc. # 1 at ¶ 37).

Plaintiff asserts causes of action against HMA under the Alabama Deceptive Trade Practices Act ("ADTPA"), breach of warranty, and the Alabama Motor Vehicle Lemon Law Act. He also has sued Precision for violations of ADTPA and breach of warranty. (Doc. # 1). Plaintiff seeks damages and an injunction, among other things. (*Id.*).

Precision appended to its brief the Declaration of Robert R. Falconi (the "Falconi Declaration"). (Doc. # 10-1). It also attached the Precision Tune Auto Care® Franchise Agreement between Precision Franchising LLC as "Franchisor" and The Cherry Group, Inc. as "Franchisee" for Center No. 056-08, effective as of June 21, 2003, as amended (the "Franchise Agreement").[2] (Doc. # 10-2). Falconi is the President of Precision (and has been since 2002) and is "personally familiar" with the affairs and corporate structure of Precision, a "remote corporate affiliate" named Precision Franchising, LLC ("Precision Franchising"), and franchisees of Precision Franchising. (Doc. # 10-1 at ¶¶ 2, 6). "Precision is a separate entity from Precision Franchising that is not involved in the day-to-day operations of Precision Franchising." (*Id.* at ¶ 6). In its brief, Precision states it "is not licensed, qualified, registered, or authorized to do business in Alabama and does not own or operate any retail automotive repair shops in Alabama or any state." (Doc. # 10 at 2 (citing Doc. # 10-1 at ¶ 3)). Similarly, it has (1) never maintained an office, mailing address, or post office box in Alabama, (2) zero employees, agents, or officers in Alabama, (3) never owned, leased, rented, or controlled any real or personal property in Alabama, and (4) never maintained any bank accounts in Alabama. (*Id.* (citing Doc. # 10-1 at ¶¶ 4, 5)).

---

[2] Precision Franchising LLC is a Virginia limited liability company bearing the same mailing address as Precision, and The Cherry Group, Inc., has an Alabama address. (Doc. # 10-2).

3

In response, Plaintiff states that the amount in controversy exceeds the jurisdictional minimum and the parties are completely diverse, and that Defendants are subject to the court's supplemental jurisdiction. (Doc. # 16). Further, he argues that he has made a direct claim of liability against Precision based on its national warranty, and an agency claim against it to the extent it relies on its local franchisee to administer its warranty program. (*Id.*). He claims this agency relationship is undisputed and has been in place for a decade, that Precision operates, runs, and controls its "National Warranty Program," and that Precision directs the manner in which its local franchisee should implement and enforce that Program in Alabama. (*Id.*). Accordingly, Plaintiff contends that Precision's franchisee is merely an alter ego entity, which makes for continuous, systematic, and specific contacts with this forum and that places Precision under this court's personal jurisdiction. (*Id.*). Additionally, Plaintiff asserts that he has stated a valid claim against Precision. (*Id.*).

Precision contends in reply that it is not the franchisor of the local business that allegedly serviced Plaintiff's automobile, and that it is a separate entity from that franchisor—Precision Franchising.[3] (Doc. # 19). Further, Precision argues that the National Warranty Program is drafted by Precision Franchising—not Precision—and attaches a copy of the Warranty referenced in the Franchise Agreement and Complaint. (*Id.*; *see also* Doc. # 19-1). Precision also points out that the Warranty is copyrighted by Precision Franchising, and references the terms of the Warranty. (Doc. # 19). Precision reiterates that it is not involved in any National Warranty Program, and that Plaintiff has sued the wrong entity. (*Id.*). Alternatively, it argues that even if it did issue and administer a national warranty program, that activity would be

---

[3] Although Precision calls its franchisor "Precision Franchise" in its reply brief, the name of Precision Franchising is used in the Warranty attached as an exhibit. (Docs. # 19, 19-1). The court understands that Precision's counsel inadvertently used the incorrect name in the reply brief and intended to refer to the entity Precision Franchising.

4

insufficient to establish minimum contacts necessary for personal jurisdiction here because Plaintiff has not alleged that he made a warranty claim to Precision that was denied. (*Id.*).

Subsequently, on March 28, 2016, Plaintiff filed his First Amended Motion to Stay Defendant Precision's Motion to Dismiss/Summary Judgment with Leave to Conduct Limited Discovery. (Doc. # 20). In that Motion, Plaintiff asserts that Precision's Motion must be converted to one for "summary judgment" due to the attachment of documents to that Motion. (*Id.*). Accordingly, Plaintiff moves pursuant to Federal Rules of Civil Procedure 26 and 56(f) to stay consideration of Precision's Motion, and included with it a requisite Rule 56(f) affidavit. (*Id.*). Plaintiff argues that he needs limited discovery on the number of contacts with Precision's local franchisee and the degree of control over the franchisees, the role and legal relationship between Defendants and Plaintiff and between each Defendant, and the nature of Precision's "national warranty." (*Id.*). Further, he contends that the extent to which Precision's local franchisee is also its agent is a question of fact, the franchise agreement itself gives rise to questions of fact beyond Plaintiff's knowledge, and the nature and relationship between Precision and Precision Franchising and any local franchisee is also a question of fact not apparent on the face of Precision's Motion. (*Id.*). Plaintiff also concurrently filed a Motion to Strike under Rule 56, wherein he argues that the Warranty attached to Precision's reply brief is hearsay and unauthenticated, and that certain statements in the reply brief are unsupported evidentiary statements. (Doc. # 21).

Precision filed briefs in Opposition to Plaintiff's Motions. (Docs. # 26, 27). Primarily, Precision argues that Plaintiff's stay motion should be denied because basic fact-finding concerning jurisdiction should occur prior to the filing of a lawsuit. (Doc. # 26). Additionally, it argues that Plaintiff has not refuted any of the facts presented by Precision, but instead has

merely listed purported "fact issues." (*Id.*). Precision asserts that each such "fact issue" has already been answered in its dismissal motion, or is, in fact, a question of law.[4] (*Id.*). Alternatively, Precision requested that if Plaintiff's stay is granted to allow for limited discovery on the issue of personal jurisdiction, Rule 26's requirements also be stayed. (*Id.*). Concerning the Motion to Strike, Precision contends that Plaintiff's reliance on Rule 56 is misplaced because the dismissal motion is made under Rule 12(b)(2). (Doc. # 27). Additionally, Precision argues that the attached Warranty is not hearsay because it is not utilized for the truth of the matter asserted, and that its statements are supported. (*Id.*). Plaintiff did not file any reply briefs.

## III.   Legal Standard

Rule 12(b)(2) allows a party to file a motion challenging a court's exercise of personal jurisdiction over it. *See* Fed. R. Civ. P. 12(b)(2). "When a defendant moves to dismiss a complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the court should address the personal jurisdiction question first." *Walack v. Worldwide Machinery Sales, Inc.*, 278 F. Supp. 2d 1358, 1364 (M.D. Fla. 2003) (citing *Madara v. Hall*, 916 F.2d 1510, 1513-14 (11th Cir. 1990)). Of course, "[i]t goes without saying that, where the defendant challenges the court's exercise of jurisdiction over its person, the plaintiff bears the ultimate burden of establishing that personal jurisdiction is present." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009) (*citing Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006)). The issue of whether personal jurisdiction is present is generally a question of law. *Id.* "When a district court does not conduct a discretionary evidentiary hearing on a motion to

---

[4] The parties appear to disagree about whether Alabama law or Virginia law governs the Franchise Agreement. Although the court has doubts regarding whether Precision has standing to raise that issue (after all, it is not a party to the Franchise Agreement), that issue is not one the court must decide to resolve the subject Motions.

dismiss for lack of jurisdiction, the plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (quoting *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988)). "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Id.*

In assessing a Rule 12(b)(2) motion, the court takes the plaintiff's allegations in his complaint as true. *See Stubbs*, 447 F.3d at 1360 (citations omitted). "Where, as here, the defendant submits affidavits contrary to the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Id.* If the defendant's supporting affidavits conflict with the plaintiff's complaint and supporting documents, the court "must construe all reasonable inferences in favor of the plaintiff." *Id.*

**IV.   Analysis**

Precision moves to dismiss this case under Rule 12(b)(2), while Plaintiff moves to stay it and allow for limited discovery pursuant to Rules 26 and 56(f), and to strike certain statements and materials from Precision's reply brief. The court initially considers Plaintiff's Motions. After careful review, the court concludes that Plaintiff's Motions are due to be denied, and that Precision's Motion under Rule 12(b)(2) is due to be granted.

    **A.   Plaintiff's Motion to Stay and Motion to Strike**

Plaintiff contends that Precision's Motion should be converted to one for summary judgment and that he should also be permitted to conduct limited jurisdictional discovery. (He also moves to strike the Warranty and certain statements from Defendant's reply brief). The court disagrees on both counts.

### 1. Precision's Motion Is Not Due To Be Converted into One for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 12(d), the court must treat a motion under *Rule 12(b)(6)* or *12(c)* as a motion for summary judgment when it considers matters outside the pleadings. Fed. R. Civ. P. 12(d). But, the plain language of Rule 12 indicates that it is appropriate to consider the matters outside the pleadings on a *Rule 12(b)(2)* motion. *See* Fed. R. Civ. P. 12. Precision's motion is filed pursuant to Rule 12(b)(2). Thus, the court may properly consider the affidavits and other materials attached to Precision's motion to dismiss for lack of personal jurisdiction without converting it to a motion for summary judgment. *See Stubbs*, 447 F.3d at 1360 (allowing affidavits and supporting documents to motion to dismiss for lack of personal jurisdiction); *cf. also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (appropriate to consider materials attached to dismissal motion papers without converting them to motions for summary judgment when contents of materials not in dispute).

### 2. Plaintiff Is Not Entitled To Limited Jurisdictional Discovery

Plaintiff also asks the court to stay Precision's Motion pursuant to Rule 26 and allow for limited discovery on the personal jurisdiction issue. (Doc. # 20). The Eleventh Circuit has held that a district court's exercise of the power to order jurisdictional discovery "is not entirely discretionary." *RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 Fed. Appx. 779, 790 (11th Cir. 2014) (quoting *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729 (11th Cir. 1982)). "[F]ederal courts should order limited jurisdictional discovery where the information the plaintiff seeks, if it exists, would give rise to jurisdiction." *Id.*

Although Plaintiff contends he needs to discover additional facts before the court can rule on Precision's Motion, "[t]he resolution of the jurisdictional question in this case does not require any additional findings of fact." *Id.* Indeed, this case is similar to *RMS Titanic*: both

here and in that case, the plaintiff identified certain areas in which it wanted more discovery, including the dealings between the defendant and a non-party over whom the court may have personal jurisdiction. *See id*. at 790-91. But, just as in *RMS Titanic*, Plaintiff has already received information from Precision, and there is no indication that the facts Plaintiff seeks to discover would affect this court's jurisdictional analysis.[5] *See id.* Because the resolution of Precision's Motion does not turn on facts he seeks to discover, Plaintiff's request for a stay to seek limited discovery is due to be denied. *See RMS Titanic*, 579 Fed. Appx. at 791 (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367-68 (11th Cir. 1997)).

### 3. Plaintiff's Motion to Strike Is Due To Be Denied

Plaintiff contends that in its Motion Precision relies upon hearsay and unsupported statements. However, the Warranty attached to Precision's reply brief is expressly referenced in the Franchise Agreement, which is supported by an affidavit based on the affiant's personal knowledge. (Doc. # 27; *see also* Docs. # 10-1, 10-2, 19-1). And, in any event, the Warranty is not being presented by Precision for the truth of the matter asserted. (Doc. # 27; *see also* 19-1). *Cf. Nuance Commcns., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230 n. 1 (Fed. Cir. 2010) ("'there is no strict prohibition on a court's consideration of hearsay' in connection with a motion to dismiss for lack of personal jurisdiction"); *accord Presby Patent Trust v. Infiltrator Sys., Inc.*, No. 14-cv-542, 2015 WL 3506517, at *2 n.2 (D. N.H. June 3, 2015) ("A court considering a motion to dismiss on personal jurisdiction grounds may properly consider documents attached to an opposition, even if they contain hearsay, so long as that evidence 'bears circumstantial indicia of reliability.'" (Citations omitted)). Likewise, the statements targeted by Plaintiff are supported by the Falconi Declaration. (*See* Docs. # 10-1, 19).

---

[5] Moreover, Plaintiff's purported questions of fact (which, the court notes, actually seek discovery on the merits of Plaintiff's claims), simply do not rise to the level of factual information needed to decide the *in personam* jurisdictional question presented here.

Accordingly, the court may consider the materials attached to Precision's Motion briefs (Docs. # 10, 19) without converting it to summary judgment. Plaintiff's Motion to Strike (Doc. # 21) is due to be denied.

### B. Precision's Motion Is Due To Be Granted

Precision argues that this court does not have personal jurisdiction over it. "The requirement that a court have personal jurisdiction flows not from Art[icle] III [of the Constitution], but from the Due Process Clause. . . . It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauzites de Guinee*, 456 U.S. 694, 702 (1982). A district court employs a two-step inquiry to ascertain whether it has personal jurisdiction over a non-resident defendant. *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007). First, a court must determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute. *Id.* (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)). Second, the court examines whether exercising jurisdiction over the defendant would be a violation of the Fourteenth Amendment's Due Process Clause, "which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction not offend 'traditional notions of fair play and substantial justice.'" *Id.* (citing *Sculptchair*, 94 F.3d at 626 (quoting in turn *Intl. Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945))). Here, the two inquiries merge because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent permissible under the Constitution. *See* Ala. R. Civ. P. 4.2(b); *Hiller Invests., Inc. v. Insultech Grp., Inc.*, 957 So. 2d 1111, 1115 (Ala. 2006).

The courts have recognized two types of personal jurisdiction: general and specific. General jurisdiction occupies "a less dominant place in the contemporary scheme." *Daimler AG*

*v. Bauman*, 134 S. Ct. 746, 758 (2014). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Intl. Shoe*, 326 U.S. at 317). A corporation's "place of incorporation and principal place of business are 'bases for general jurisdiction.'" *Bauman*, 134 S. Ct. at 760 (quoting Brilmayer et al., *A General Look at General Jurisdiction*, 66 Texas L. Rev. 721, 735 (1988)). Here, Precision is not incorporated in Alabama and does not have its principal place of business here.[6] (*See* Doc. # 1 at ¶ 3; *see also* Doc. # 10). And, even if Precision made sizeable sales in Alabama, that would not be enough to render it subject to general, all-purpose jurisdiction. *See Bauman*, 134 S. Ct. at 761-62. Accordingly, the court lacks general personal jurisdiction over Precision.

On the other hand, specific personal jurisdiction "arises out of or relates to the defendant's contacts with the forum." *Bauman*, 134 S. Ct. at 754 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984)) (changes and other citations omitted). These contacts must relate to the cause of action being asserted against the defendant. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-74 (1985); *Eurisol*, 488 F.3d at 925 (specific jurisdiction arises "out of a party's activities in the forum state that are related to the cause of action alleged in the complaint").

> In a case involving specific jurisdiction, a defendant's contacts with the forum state must satisfy three criteria: they must be related to the plaintiff's cause of action or have given rise to it; they must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum; and they must be such that the defendant should reasonably anticipate being hauled into court there.

---

[6] Moreover, Plaintiff does not argue in support of general jurisdiction in its opposition brief; instead, he focuses on specific jurisdiction. (*See* Doc. # 16).

11

*Eurisol*, 488 F.3d at 925 (quotations and citation omitted). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Precision has presented facts (*i.e.*, not conclusory assertions) that show it has not purposefully availed itself of the benefits and protections of Alabama's laws. (*See* Docs. # 10-1, 10-2) (the Falconi Declaration and the attached Franchise Agreement). Likewise, it has demonstrated that it has not "purposefully established minimum contacts within" Alabama. *Burger King*, 471 U.S. at 476; (*See* Docs. # 10-1, 10-2). Indeed, Precision sets forth in the Falconi Declaration many specifics that evidence its lack of contact within Alabama. (Doc. # 10-1). The Franchise Agreement demonstrates that it is actually a different company, Precision Franchising, that has entered into an agreement with an in-state Alabama franchisee, The Cherry Group, Inc. (the "Franchisee"), to utilize the Precision Tune Auto Care trademarks as a trade name (but not as a legal name), among other things.[7] (Doc. # 10-2). Significantly, the Franchise Agreement requires the Franchisee to offer and sell from its trademarked Precision Auto Tune Care Center services and products approved by Precision Franchising. (*Id.* at 11.2.4). And, in doing so, "Franchisee shall use only the standard service order, warranty and other forms approved by Franchisor and no other forms or documents. . . ." (*Id.* at 11.2.5). Further, the signatories to the Franchise Agreement are Precision Franchising and the Franchisee; Precision itself does not appear anywhere in the Agreement. (*See* Doc. # 10-2). "The agreement speaks

---

[7] Of course, the court can see how the use of the trademarked name Precision Tune Auto Care might confuse a consumer such as Plaintiff. But, because "[a] franchise agreement, without more, does not make the franchisee an agent of the franchisor," *Kennedy v. Western Sizzlin Corp.*, 857 So.2d 71, 77 (Ala. 2003), an agreement entered by a "remote corporate affiliate" of that franchisor does not make the franchisee (or franchisor) an agent of the affiliate. (Doc. # 10-1 at ¶ 6).

for itself" (and is authenticated by the Falconi Declaration).[8] *Hancock Bank v. Boyd Bros., Inc.*, No. 11-cv-94, 2011 WL 6739294, at *3 (N.D. Fla. Dec. 22, 2011); (*see* Doc. # 10-1 at ¶ 7).

"Where, as here, the defendant submits affidavits contrary to the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction. . . ." *Stubbs*, 447 F.3d at 1360. Plaintiff has not shown any evidence in support of personal jurisdiction, but has instead only argued that questions of fact exist. The court, however, concludes that there are no questions of fact as to whether Precision is amenable to personal jurisdiction over this court. Plaintiff has not satisfied his burden, and the court holds that it lacks personal jurisdiction over Precision.

## V. Conclusion

For all these reasons, Plaintiff's Motions (Docs. # 20, 21) are due to be denied, and Precision's Motion (Doc. # 9) is due to be granted. Thus, Plaintiff's claims against Precision are due to be dismissed for want of jurisdiction. A separate order will be entered.

**DONE** and **ORDERED** this June 9, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[8] Even without taking the words of the document as the truth of the matter asserted, the Franchise Agreement plainly puts persons such as Plaintiff on notice that Precision does not have contacts within the State of Alabama; rather, it is Precision Franchising, a non-party, that does. Similarly, the Warranty demonstrates that Precision is not the entity associated with the Warranty, and supports the argument that it has no contacts within Alabama. (Doc. # 19-1).

Moreover, and in any event, the Franchise Agreement demonstrates that (1) Precision is not the company availing itself of business within Alabama, and (2) Precision Franchising is an entirely different (albeit related) company. The facts presented by Precision may provide a helpful road map for Plaintiff to utilize in locating the correct party.